[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 06-11892

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 14, 2007
THOMAS K. KAHN
CLERK

D. C. Docket No. 98-01938-CV-5

SHERRI WILLIAMS,
B.J. BAILEY,
ALICE JEAN COPE,
JANE DOE,
DEBORAH L. COOPER,
BENNY COOPER,
DAN BAILEY,
JANE POE,
JANE ROE,

Plaintiffs-Appellants,

BETTY FAYE HAGGERMAKER, et al.,

Plaintiffs,

versus

TIM MORGAN,
in his official capacity as the
District Attorney of the County of
Madison Alabama,

Defendant,

TROY KING,
in his official capacity as the
Attorney General of Alabama,

                                                    Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

**(February 14, 2007)**

Before DUBINA and WILSON , Circuit Judges, and HODGES,[*] District Judge.

WILSON, Circuit Judge:

This case comes to us for the third time, arising from a constitutional challenge to a provision of the Alabama Code prohibiting the commercial distribution of devices "primarily for the stimulation of human genital organs." Ala. Code § 13A-12-200.2(a)(1). The only question remaining before us is whether public morality remains a sufficient rational basis for the challenged statute after the Supreme Court's decision in *Lawrence v. Texas*, 539 U.S. 558, 123 S. Ct. 2472, 156 L. Ed. 2d 508 (2003). The district court distinguished *Lawrence* and held, following our prior precedent in this case, *Williams v. Pryor*, 240 F.3d

_____

[*]Honorable Wm. Terrell Hodges, United States District Judge for the Middle District of Florida, sitting by designation.

944 (11th Cir. 2001) (*Williams II*), that the statute survives rational basis scrutiny. Because we find that public morality remains a legitimate rational basis for the challenged legislation even after *Lawrence*, we affirm.

## BACKGROUND

The American Civil Liberties Union ("ACLU")[1] filed suit on behalf of individual users and vendors of sexual devices[2] to enjoin enforcement of Ala. Code § 13A-12-200.2(a)(1), which prohibits the distribution of "any device designed or marketed as useful primarily for the stimulation of human genital organs."[3] Plaintiffs in this case include both married and unmarried users of prohibited sexual devices, as well as vendors of sexual devices operating both in typical retail storefronts and in "tupperware"-style parties where sexual aids and novelties are displayed and sold in homes. The stipulated facts establish that sexual devices have many medically and psychologically therapeutic uses, recognized by healthcare professionals and by the FDA. The statute exempts sales of sexual

---

[1]"The ACLU" will be used to refer collectively to appellants, as that organization was "the driving force" behind this litigation. *Williams v. Att'y Gen. of Ala.*, 378 F.3d 1232, 1233 n.1 (11th Cir. 2004) (*Williams IV*)

[2]We will use the shorthand term "sexual device" in place of the phrase "any device designed or marketed as useful primarily for the stimulation of the human genital organs."

[3]The statute reads in pertinent part: "It shall be unlawful for any person to knowingly distribute, possess with intent to distribute, or offer or agree to distribute any obscene material or any device designed or marketed as useful primarily for the stimulation of human genital organs for any thing of pecuniary value." Ala. Code § 13A-12-200.2(a)(1).

devices "for a bona fide medical, scientific, educational, legislative, judicial, or law enforcement purpose." § 13A-12-200.4. Also, there are a number of other sexual products, such as ribbed condoms and virility drugs, that are not prohibited by the statute. The statute does not prohibit the use, possession, or gratuitous distribution of sexual devices. *See* § 13A-12-200.2 ("for anything of pecuniary value").

The ACLU has argued throughout this litigation that the statute burdens and violates sexual-device users' right to privacy and personal autonomy under the Fourteenth Amendment. Alternatively, it has argued that there is no rational relationship between a complete ban on the sale of sexual devices and a proper legislative purpose.

Our second opinion in this case (*Williams IV*) provides a thorough summary of the procedural history of the case:

> Following a bench trial, the district court concluded that there was no currently recognized fundamental right to use sexual devices and declined the ACLU's invitation to create such a right. *Williams v. Pryor*, 41 F. Supp. 2d. 1257, 1282-84 (N.D. Ala. 1999) (*Williams I*). The district court then proceeded to scrutinize the statute under rational basis review. *Id.* at 1284. Concluding that the statute lacked any rational basis, the district court permanently enjoined its enforcement. *Id.* at 1293.
> On appeal, we reversed in part and affirmed in part. [*Williams II*, 240 F.3d 944.] We reversed the district court's conclusion that the statute lacked a rational basis and held that the promotion and preservation of public morality provided a rational basis. *Id.* at 952. However, we affirmed the district court's rejection of the ACLU's *facial* fundamental-rights challenge to the statute. *Id.* at 955. We then

4

remanded the action to the district court for further consideration of the *as-applied* fundamental-rights challenge. *Id.* at 955.

On remand, the district court again struck down the statute. *Williams v. Pryor*, 220 F. Supp. 2d 1257 (N.D. Ala. 2002) (*Williams III*). On cross motions for summary judgment, the district court held that the statute unconstitutionally burdened the right to use sexual devices within private adult, consensual sexual relationships. *Id.* After a lengthy discussion of the history of sex in America, the district court announced a fundamental right to "sexual privacy," which, although unrecognized under any existing Supreme Court precedent, the district court found to be deeply rooted in the history and traditions of our nation. *Id.* at 1296. The district court further found that this right "encompass[es] the right to use sexual devices like the vibrators, dildos, anal beads, and artificial vaginas" marketed by the vendors involved in this case. *Id.* The district court accordingly applied strict scrutiny to the statute. *Id.* Finding that the statute failed strict scrutiny, the district court granted summary judgment to the ACLU and once again enjoined the statute's enforcement. *Id.* at 1307.

*Williams v. Att'y Gen. of Ala.* 378 F.3d 1232, 1234 (11th Cir. 2004) (*Williams IV*).

In *Williams IV*, we again reversed the judgment of the district court, holding that there was no *pre-existing*, fundamental, substantive-due-process right to sexual privacy triggering strict scrutiny. *Id.* at 1238. In so holding, we determined that *Lawrence*, which had been decided after the district court's decision in *Williams III*, did not recognize a fundamental right to sexual privacy. *Id.* Furthermore, we declined to recognize a *new* fundamental right to use sexual devices. *Id.* at 1250. With strict scrutiny off the table, we remanded the case for further proceedings consistent with the opinion. *Id.* We advised that on remand, the district court should "examine whether our holding in *Williams II* that Alabama's law has a

5

rational basis (e.g., public morality) remains good law" after *Lawrence* overruled *Bowers v. Hardwick*, 478 U.S. 186, 106 S. Ct. 2841, 92 L. Ed. 2d 140 (1986). *Id.* at 1238 n.9 (internal quotations omitted); *see also id.* at 1259 n.25 (Barkett, J., dissenting) ("On remand, the district court must consider whether our holding in *Williams II* . . . remains good law now that *Bowers* has been overruled."). We thus "save[d] for a later day" the question of whether public morality still serves as a rational basis for legislation after *Lawrence. Id.* at 1238 n.9.

On remand, the district court decided "not to invalidate the Alabama law in question here simply because it is founded on concerns over public morality." *Williams v. King*, 420 F. Supp. 2d 1224, 1250 (N.D. Ala. 2006) (*Williams V*). In so concluding, the district court opined: "To hold that public morality can *never* serve as a rational basis for legislation after *Lawrence* would cause a 'massive disruption of the social order,' one this court is not willing to set into motion." *Id.* at 1249-50 (quoting *Lawrence*, 539 U.S. at 590, 123 S. Ct. 2491 (Scalia, J., dissenting)). The district court also addressed "whether this case fits squarely within the mold of *Lawrence*, such that *Lawrence's* holding—that public morality was not a sufficiently rational basis to support the Texas [sodomy statute]—applies to strike down the Alabama law here." *Id.* at 1250. The district court concluded that the cases are distinguishable, and *Lawrence* does not compel striking down the

6

Alabama law in this case. [4]  *Id.* at 1253-54

The ACLU now appeals the district court's decision in *Williams V* granting

the State's summary judgment motion and denying the ACLU's summary

judgment motion.

## STANDARD OF REVIEW

We review a summary judgment decision *de novo* and apply the same legal

standard that bound the district court.  *Cruz v. Publix Super Markets, Inc.*, 428 F.3d

1379, 1382 (11th Cir. 2005).

## DISCUSSION

In *Williams IV* we held that the Supreme Court in *Lawrence* "declined the

invitation" to recognize a fundamental right to sexual privacy, which would have

compelled us to employ strict scrutiny in assessing the constitutionality of the

challenged statute.  *Williams IV*, 378 F.3d at 1236.  Thus, because there is no

fundamental right at issue, we apply rational basis scrutiny to the challenged

statute.  *See Romer v. Evans*, 517 U.S. 620, 631, 116 S. Ct. 1620, 1627, 134 L. Ed.

2d 855 (1996) ("[I]f a law neither burdens a fundamental right nor targets a suspect

---

[4]The district court distinguished this case from *Lawrence* in part on the basis that *Lawrence* implicates equal protection concerns—the Texas statute targeted a "discrete and insular minority," while this statute does not.  *Williams V*, 420 F. Supp. at 1250-53.  We need not address whether the district court is correct that *Lawrence* employs an equal protection analysis. Here, we apply a substantive due process analysis and distinguish *Lawrence* on other grounds.

class, we will uphold the [law] so long as it bears a rational relation to some legitimate end."). For the reasons stated below, we find that the State's interest in preserving and promoting public morality provides a rational basis for the challenged statute.

Rational basis review is "a highly deferential standard that proscribes only the very outer limits of a legislature's power." *Williams II*, 240 F.3d at 948. A statute is constitutional under rational basis scrutiny so long as "there is *any reasonably conceivable state of facts* that could provide a rational basis for the [statute]." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313, 113 S. Ct. 2096, 2101, 124 L. Ed. 2d 211 (1993) (emphasis added). Furthermore, the Supreme Court has held:

> On rational-basis review, . . . a statute . . . comes to us bearing a strong presumption of validity, and those attacking the rationality of the legislative classification have the burden to negative every conceivable basis which might support it. Moreover, because we never require a legislature to articulate its reasons for enacting a statute, it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature.

*Id.* at 314-315, 113 S. Ct. at 2101-02 (internal quotation marks and citations omitted). In addition, state legislatures are "allowed leeway to approach a perceived problem incrementally, even if its incremental approach is significantly over-inclusive or under-inclusive." *Williams II*, 240 F.3d at 948 (internal quotation

8

marks omitted).

We previously addressed the constitutionality of the challenged Alabama law under rational basis scrutiny and held that "[t]he State's interest in public morality is a legitimate interest rationally served by the statute." *Id.* at 949. We noted that "[t]he crafting and safeguarding of public morality has long been an established part of the States' plenary police power to legislate and indisputably is a legitimate government interest under rational basis scrutiny." *Id.* at 949; *see also Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 569, 111 S. Ct. 2456, 2462, 115 L. Ed. 2d 504 (1991) (citing *Bowers,* 478 U.S. at 196, 106 S. Ct. at 2846; *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 61, 93 S. Ct. 2628, 2637, 37 L. Ed. 2d 446 (1973); *Roth v. United States,* 354 U.S. 476, 485, 77 S. Ct. 1304, 1309, 1 L. Ed. 2d 1498 (1957)). Further, we held that "a statute banning the commercial distribution of sexual devices is rationally related to this interest." *Williams II*, 240 F.3d at 949.

Ordinarily, we would be bound by our holding in *Williams II* according to the law-of-the-case doctrine. Under the law-of-the-case doctrine, "the findings of fact and conclusions of law by an appellate court are generally binding in all subsequent proceedings in the same case in the trial court or on a later appeal." *This That & The Other Gift And Tobacco, Inc. v. Cobb County, Ga.*, 439 F.3d 1275, 1283 (11th Cir. 2006) (per curiam) (internal quotation marks omitted).

9

When deciding an issue of law, the only means by which the law-of-the-case doctrine may be overcome is if "(1) our prior decision resulted from a trial where the parties presented substantially different evidence from the case at bar; (2) subsequently released controlling authority dictates a contrary result; or (3) the prior decision was clearly erroneous and would work manifest injustice." *Alphamed, Inc. v. B. Braun Med., Inc.*, 367 F.3d 1280, 1286 (11th Cir. 2004); *see also This That & The Other*, 439 F.3d at 1283. The ACLU impliedly argues that *Lawrence* is controlling authority that compels a contrary result, because it dictates that public morality no longer constitutes a rational basis for government intrusion on private decisions about sexual intimacy—which is precisely what it argues the Alabama statute does.[5]

In *Lawrence* the Supreme Court held that the Texas sodomy statute challenged in that case "further[ed] no legitimate state interest which can justify its intrusion into the personal and private life of the individual." 539 U.S. at 578, 123 S. Ct. at 2484. In so holding, the *Lawrence* majority relied on Justice Stevens's analysis in his *Bowers* dissent: "[T]he fact that the governing majority in a State

---

[5]Judge Barkett expressly makes the argument that the law-of-the-case doctrine does not apply to *Williams II* because *Lawrence* is subsequently released controlling authority dictating a contrary result. *See Williams IV*, 378 F.3d at 1259 n.25 (Barkett, J., dissenting); *see also id.* at 1259 (Barkett, J., dissenting) ("*Williams II* . . . rel[ied] on the now defunct *Bowers* to conclude that public morality provides a legitimate state interest. . . . Obviously now that *Bowers* has been overruled, this proposition is no longer good law and we must, accordingly, revisit our holding in *Williams II*.").

has traditionally viewed a particular practice as immoral is not a sufficient reason for upholding a law prohibiting the practice . . . ." *Id.* at 577, 123 S. Ct. at 2483 (quoting *Bowers*, 478 U.S. at 216, 106 S. Ct. at 2857 (Stevens, J. dissenting)). The Court applied Justice Stevens's analysis in overruling *Bowers* and in holding that the Texas sodomy statute was unconstitutional.

The ACLU argues that the Alabama statute at issue in this case, like the Texas sodomy statute at issue in *Lawrence*, intrudes into personal and private decisions about sexual intimacy. It argues that "this law intrudes just as deeply into the sphere of individual decision-making about sexuality as the law struck down in *Lawrence*." Appellant's Br. 29. Thus, the ACLU argues, this case is indistinguishable from *Lawrence*—just as in that case, in this case there is no legitimate state interest, including public morality, that supports the challenged Alabama statute. Therefore, it argues that the statute cannot survive constitutional scrutiny under *Lawrence.*

However, while the statute at issue in *Lawrence* criminalized *private* sexual conduct, the statute at issue in this case forbids *public*, *commercial* activity. To the extent *Lawrence* rejects public morality as a legitimate government interest, it invalidates only those laws that target conduct that is *both* private *and* non-commercial. *Lawrence*, 439 U.S. at 578, 123 S. Ct. at 2484 ("The present case

11

does not involve minors.  It does not involve persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused.  *It does not involve public conduct* or prostitution.") (emphasis added). Unlike *Lawrence*, the activity regulated here is *neither* private *nor* non-commercial.[6]

This statute targets *commerce* in sexual devices, an inherently public activity, whether it occurs on a street corner, in a shopping mall, or in a living room.  As the majority in *Williams IV* so colorfully put it: "There is nothing 'private' or 'consensual' about the advertising and sale of a dildo."  378 F.3d at 1237 n.8; *see also id.* at 1241.  The challenged statute does not target possession, use, or even the gratuitous distribution of sexual devices.  In fact, plaintiffs here continue to possess and use such devices.  States have traditionally had the authority to regulate commercial activity they deem harmful to the public.  *See, e.g.*, *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456, 98 S. Ct. 1912, 1919, 56 L. Ed. 2d 444 (1978) ("[T]he State does not lose its power to regulate commercial

---

[6]The ACLU emphasizes language in *Williams IV* where we stated that "for purposes of constitutional analysis, restrictions on the ability to purchase an item are tantamount to restrictions on the use of that item."  378 F.3d at 1242.  However, the *Williams IV* court connected the sale of sexual devices with their use only in the limited context of framing the scope of the liberty interest at stake under the fundamental rights analysis of *Washington v. Glucksberg*, 521 U.S. 702, 117 S. Ct. 2258, 138 L. Ed. 2d 772 (1997).  *Williams IV*, 378 F.3d at 1242.  We were clear in *Williams IV*, that the challenged statute did not implicate private or consensual activity.  *Id.* at 1237 n.8, 1241.

activity deemed harmful to the public whenever speech is a component of that activity."). Thus, while public morality was an insufficient government interest to sustain the Texas sodomy statute, because the challenged statute in this case does not target private activity, but public, commercial activity, the state's interest in promoting and preserving public morality remains a sufficient rational basis.

Furthermore, we do not read *Lawrence*, the overruling of *Bowers*, or the *Lawrence* court's reliance on Justice Stevens's dissent, to have rendered public morality altogether illegitimate as a rational basis. The principle that "[t]he law . . . is constantly based on notions of morality," *Bowers*, 478 U.S. at 196, 106 S. Ct. at 2846, was not announced for the first time in *Bowers* and remains in force today. As we noted in *Williams IV*, the Supreme Court has affirmed on repeated occasions that laws can be based on moral judgments. *Williams IV*, 378 F.3d at 1238 n.8; *see Barnes*, 501 U.S. at 569, 111 S. Ct. at 2462 (upholding a public indecency statute, stating, "[t]his and other public indecency statutes were designed to protect morals and public order. The traditional police power of the States is defined as the authority to provide for the public health, safety, and morals, and we have upheld such a basis for legislation."); *id.* (noting that "a legislature could legitimately act . . . to protect 'the social interest in order and morality'"); *Gregg v. Georgia*, 428 U.S. 153, 183, 96 S. Ct. 2909, 2930, 49 L. Ed. 2d 859 (1976) (upholding the death

13

penalty, noting that "capital punishment is an expression of society's moral outrage at particularly offensive conduct"); *Paris Adult Theatre I*, 413 U.S. at 61, 93 S. Ct. at 2637 (holding that Georgia had a legitimate interest in regulating obscene material because the legislature "could legitimately act . . . to protect 'the social interest in order and morality'") (quoting *Roth*, 354 U.S. at 485, 77 S. Ct. at 1309); *United States v. Bass*, 404 U.S. 336, 348, 92 S. Ct. 515, 522, 30 L. Ed. 2d 488 (1971) (noting that "criminal punishment usually represents the moral condemnation of the community").

Also, we have discussed the post-*Lawrence* viability of public morality as a rational basis for legislation with approval. *See Lofton v. Sec'y of the Dept. of Children and Family Servs.*, 358 F.3d 804, 819 n.17 (2004). In *Lofton*, upholding a law prohibiting homosexual couples from adopting, we indicated that public morality likely remains a constitutionally rational basis for legislation:

> Florida also asserts that the statute is rationally related to its interest in promoting public morality both in the context of child rearing and in the context of determining which types of households should be accorded legal recognition as families. Appellants respond that public morality cannot serve as a legitimate state interest. . . . [I]t is unnecessary for us to resolve the question. We do note, however, the Supreme Court's conclusion that there is not only a legitimate interest, but a substantial government interest in protecting order and morality, and its observation that [i]n a democratic society legislatures, not courts, are constituted to respond to the will and consequently the moral values of the people.

14

*Id.*, 358 F.3d at 819 n.17 (internal quotations and citations omitted).  We have also noted: "One would expect the Supreme Court to be manifestly more specific and articulate than it was in *Lawrence* if now such a traditional and significant jurisprudential principal has been jettisoned wholesale . . . ."  *Williams IV*, 378 F.3d at 1238 n.8.

Accordingly, we find that public morality survives as a rational basis for legislation even after *Lawrence*, and we find that in this case the State's interest in the preservation of public morality remains a rational basis for the challenged statute.  By upholding the statute, we do not endorse the judgment of the Alabama legislature.  As we stated in *Williams II*:

> However misguided the legislature of Alabama may have been in enacting the statute challenged in this case, the statute is not constitutionally irrational under rational basis scrutiny because it is rationally related to the State's legitimate power to protect its view of public morality.  "The Constitution presumes that . . . improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted."  *Vance v. Bradley,* 440 U.S. 93, 97, 99 S. Ct. 939, 942-943, 59 L. Ed. 2d 171 (1979).  This Court does not invalidate bad or foolish policies, only unconstitutional ones; we may not "sit as a super-legislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines."  *New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S. Ct. 2513, 2517, 49 L. Ed. 2d 511 (1976).

*Williams II*, 240 F.3d at 952.

## CONCLUSION

For the foregoing reasons, we reaffirm our holding in *Williams II* that the challenged statute is constitutional and we affirm the judgment of the district court.

**AFFIRMED.**