REVISED MARCH 10, 2008

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

February 12, 2008

Charles R. Fulbruge III
Clerk

No. 06-51067

RELIABLE CONSULTANTS, INC., doing business as Dreamer's and Le
Rouge Boutique

Plaintiff - Appellant

PHE, INC., doing business as Adam and Eve, Inc.

Intervenor - Plaintiff - Appellant

v.

RONNIE EARLE, in his official capacity only, Travis County District
Attorney

Defendant - Appellee

STATE OF TEXAS

Intervenor - Defendant - Appellee

Appeals from the United States District Court
for the Western District of Texas

Before REAVLEY, BARKSDALE, and PRADO, Circuit Judges.

REAVLEY, Circuit Judge:

This case assesses the constitutionality of a Texas statute making it a crime to promote or sell sexual devices.  The district court upheld the statute's constitutionality and granted the State's motion to dismiss for failure to state a claim.  We reverse the judgment and hold that the statute has provisions that violate the Fourteenth Amendment of the U.S. Constitution.

## I. The Statute

The forerunner of Texas's obscenity statute was enacted in 1973 and had the modest goal of prohibiting "obscene material."[1]  Six years later, the legislature redefined "obscene material" so that it would track the Supreme Court's definition of obscenity detailed in Miller v. California.[2]  That same year, the legislature also expanded the scope of the statute so that it would prohibit the "promotion" and "wholesale promotion" of "obscene devices," which includes selling, giving, lending, distributing, or advertising for them.[3]  The legislature chose to broadly define "obscene device," not using the Miller test, but as any device "designed or marketed as useful primarily for the stimulation of human genital organs."[4]  In 1985, the Texas Court of Criminal Appeals held that the statute did not violate an individual's right to privacy, concluding that there was no constitutional right to "stimulate . . . another's genitals with an object designed or marketed as useful primarily for that purpose."[5]  Later, in 1993, a narrow affirmative defense was added to protect those who promoted "obscene devices" for "a bona fide medical, psychiatric, judicial, legislative, or law

---

[1] Tex. Penal Code Ann. §§ 43.21–.23 (Vernon 1973).

[2] Tex. Penal Code Ann. § 43.21 (Vernon 1979) (defining "obscene material" in relation to the three-part "obscenity" test set forth in Miller v. California, 413 U.S. 15, 23–25, 93 S. Ct. 2607, 2614–16 (1973)).

[3] Id. §§ 43.21(a)(5), (6).

[4] Id. § 43.21(a)(7).

[5] Yorko v. State, 690 S.W.2d 260, 263 (Tex. Crim. App. 1985).

enforcement purpose."[6] Violating the statute can result in punishment of up to two years in jail.[7]

In essence, the statute criminalizes the selling, advertising, giving, or lending of a device designed or marketed for sexual stimulation unless the defendant can prove that the device was sold, advertised, given, or lent for a statutorily-approved purpose. The statute, however, does not prohibit the use or possession of sexual devices for any purpose.

Besides Texas, only three states have a similar obscene-devices statute: Mississippi,[8] Alabama,[9] and Virginia.[10] The Mississippi supreme court has upheld its state's statute against First and Fourteenth Amendment challenges.[11] Neither the Alabama nor Virginia supreme court has entertained a challenge to its state's statute, but the Eleventh Circuit has rejected a Fourteenth Amendment challenge to Alabama's statute.[12] On the other hand, while the legislatures of Louisiana, Kansas, and Colorado had enacted obscene-devices statutes, each of their respective state supreme courts struck down its law on

---

[6] Tex. Penal Code Ann. § 43.23(g) (Vernon 1993).

[7] Tex. Penal Code Ann. §§ 12.35(a), 43.23(a)–(d). The full text of the statute is provided in the appendix. All subsequent citations to the statute are to the current version.

[8] Miss. Code Ann. § 97-29-105.

[9] Ala. Code § 13A-12-200.2.

[10] Va. Code Ann. § 18.2-373.

[11] PHE, Inc. v. State, 877 So. 2d 1244, 1248–50 (Miss. 2004).

[12] Williams v. Morgan, 478 F.3d 1316 (11th Cir. 2007), cert. denied, Williams v. King, 128 S. Ct. 77 (2007). The Williams case had previously been before the Eleventh Circuit, where the court held that the obscene-device ban did not burden a fundamental right. See Williams v. Attorney General, 378 F.3d 1232, 1233 (11th Cir. 2004) (remanding the case to the district court).

Fourteenth Amendment grounds.[13]  Likewise, while the Georgia legislature had passed an obscene-device statute, the Eleventh Circuit recently struck it down.[14]

## II. This Proceeding

Reliable Consultants, Inc. d/b/a Dreamer's and Le Rouge Boutique operates four retail stores in Texas that carry a stock of sexual devices.  The sexual devices are for off-premise, private use.  PHE, Inc. d/b/a Adam & Eve, Inc. is also engaged in the retail distribution of sexual devices.  It operates no public facilities in Texas, but rather sells sexual devices by internet and mail, and it distributes sexual devices ordered in Texas by mail and common carrier. Reliable and PHE desire to increase their sale of, and advertising for, sexual devices in Texas, and they fear prosecution under the statute if they do so.

Reliable filed this declaratory action to challenge the constitutionality and enjoin the enforcement of the statutory provisions criminalizing the promotion of sexual devices.  The complaint alleged that these provisions violate the substantive liberty rights protected by the Fourteenth Amendment and the commercial speech rights protected by the First Amendment.  Later, PHE intervened as a plaintiff and sought similar relief.

Reliable and PHE contend that many people in Texas, both married and unmarried, use sexual devices as an aspect of their sexual experiences.  For some couples in which one partner may be physically unable to engage in intercourse, or in which a contagious disease, such as HIV, precludes intercourse, these devices may be one of the only ways to engage in a safe, sexual

---

[13] See State v. Brenan, 772 So. 2d 64, 72–76 (La. 2000) (holding that the state's obscene-devices statute fails rational-basis review under the Fourteenth Amendment of the U.S. Constitution); State v. Hughes, 792 P.2d 1023, 1031–32 (Kan. 1990) (holding that the state's obscene-devices statute unconstitutionally burdens an individual's Fourteenth Amendment right to privacy); People ex. rel. Tooley v. Seven Thirty-Five East Colfax, Inc., 697 P.2d 348, 369–70 (Colo. 1985) (same).

[14] This That and the Other Gift and Tobacco, Inc. v. Cobb County, 439 F.3d 1275, 1278 (11th Cir. 2006).

relationship. Others use sexual devices to treat a variety of therapeutic needs, such as erectile dysfunction. Courts scrutinizing sexual-device bans in other states have explained that an "extensive review of the medical necessity for sexual devices" shows that "it is common for trained experts in the field of human sexual behavior to use sexual aids in the treatment of their male and female patients' sexual problems."[15] Still other individuals use sexual devices for non-therapeutic personal reasons, such as a desire to refrain from premarital intercourse.[16]

The district court held, inter alia, that the statute does not violate the Fourteenth Amendment because there is no constitutionally protected right to publicly promote obscene devices. Plaintiffs appeal the judgment granting the motion to dismiss. We review the district court's dismissal for failure to state a claim de novo.[17] The "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."[18] To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[19]

---

[15] Brenan, 772 So. 2d at 75. Similarly, in Hughes, the Kansas supreme court noted that recommending the use of sexual devices is "common in the treatment of anorgasmic women," "who may be particularly susceptible to pelvic inflammatory diseases, psychological problems, and difficulty in marital relationships." 792 P.2d at 1025.

[16] A recent commentator points out that sexual devices, such as vibrators, were originally designed for medical purposes and they continue to be prescribed as such. Danielle J. Lindemann, Pathology Full Circle: A History of Anti-Vibrator Legislation in the United States, 15 COLUM. J. GENDER & L. 326, 327–30, 336–41 (2006). In the early to mid-twentieth century their use for sexual pleasure became well known, and in the 1960s advertising for such devices began to emphasize their sexual benefits. Id. at 329–30.

[17] Kaltenbach v. Richards, 464 F.3d 524, 526 (5th Cir. 2006).

[18] Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464, 467 (5th Cir. 2004) (internal citations and quotation marks omitted).

[19] Bell Atl. Corp. v. Twombly, --- U.S. ----, 127 S. Ct. 1955, 1974 (2007).

With those standards in mind, we hold that the statute violates the Fourteenth Amendment.

## III. The Fourteenth Amendment

The Plaintiffs' claim is predicated upon the individual right under the Fourteenth Amendment to engage in private intimate conduct in the home without government intrusion. Because the asserted governmental interests for the law do not meet the applicable constitutional standard announced in Lawrence v. Texas,[20] the statute cannot be constitutionally enforced.

The State argues that Plaintiffs, who distribute sexual devices for profit, cannot assert the individual rights of their customers. This argument fails under the Supreme Court precedent holding that (1) bans on commercial transactions involving a product can unconstitutionally burden individual substantive due process rights and (2) lawsuits making this claim may be brought by providers of the product. In the landmark 1965 case of Griswold v. Connecticut, which invalidated a ban on the use of contraceptives, the Court recognized that the plaintiff pharmacists "have standing to raise the constitutional rights of the married people with whom they had a professional relationship."[21] Other Supreme Court cases hold that businesses can assert the rights of their customers and that restricting the ability to purchase an item is tantamount to restricting that item's use.[22] In line with these cases, the statute

---

[20] 539 U.S. 558, 123 S. Ct. 2472 (2003).

[21] 381 U.S. 479, 481, 85 S. Ct. 1678, 1679 (1965).

[22] See, e.g., Carey v. Population Servs. Int'l, 431 U.S. 678, 683–91, 97 S. Ct. 2010, 2015–19 (1977) (holding that contraceptive sellers had standing to assert the constitutional rights of their users and striking down restrictions on the distribution and advertising of contraceptives); Washington v. Glucksberg, 521 U.S. 702, 723, 117 S. Ct. 2258, 2269 (1997) (scrutinizing a ban on providing suicide assistance as a burden on the right to receive suicide assistance).

must be scrutinized for impermissible burdens on the constitutional rights of those who wish to use sexual devices.

To determine the constitutional standard applicable to this claim, we must address what right is at stake. Plaintiffs claim that the right at stake is the individual's substantive due process right to engage in private intimate conduct free from government intrusion. The State proposes a different right for the Plaintiffs: "the right to stimulate one's genitals for non-medical purposes unrelated to procreation or outside of an interpersonal relationship."[23] The Court in Lawrence—where it overruled its decision in Bowers v. Hardwick[24] and struck down Texas's sodomy ban—guides our decision:

> To say that the issue in Bowers was simply the right to engage in certain sexual conduct demeans the claim the individual put forward, just as it would demean a married couple were it to be said marriage is simply about the right to have sexual intercourse. The laws involved in Bowers and here are, to be sure, statutes that purport to do no more than prohibit a particular sexual act. Their penalties and purposes, though, have more far-reaching consequences, touching upon the most private human conduct, sexual behavior, and in the most private of places, the home.[25]

The right the Court recognized was not simply a right to engage in the sexual act itself, but instead a right to be free from governmental intrusion regarding "the most private human contact, sexual behavior." That Lawrence recognized this as a constitutional right is the only way to make sense of the fact that the Court explicitly chose to answer the following question in the

---

[23] The State narrowly describes the right as the court did in Williams v. Attorney General of Alabama, 378 F.3d 1232 (11th Cir. 2004). Id. at 1235–38 (describing the right as the right to use sex toys). But this would concoct a right contrary to the holding in Lawrence and evade the Court's ruling. See id. at 1257 (Barkett, J., dissenting) (criticizing the majority's narrow framing of the right as inconsistent with Lawrence).

[24] 478 U.S. 186, 106 S. Ct. 2841 (1986).

[25] Lawrence, 539 U.S. at 567, 123 S. Ct. at 2478.

affirmative: "We granted certiorari . . . [to resolve whether] petitioners' criminal convictions for adult consensual sexual intimacy in the home violate their vital interests in liberty and privacy protected by the Due Process Clause of the Fourteenth Amendment."[26]

The State also argues that Lawrence does not apply because the Court there was concerned with how the statute targeted a specific class of people. Justice O'Connor concurred in the majority's decision in Lawrence because she would have struck down the law on equal protection, not substantive due process, grounds.[27] But the Court explicitly rested its holding on substantive due process, not equal protection.[28] As discussed, the Court concluded that the sodomy law violated the substantive due process right to engage in consensual intimate conduct in the home free from government intrusion. Once Lawrence is properly understood to explain the contours of the substantive due process right to sexual intimacy, the case plainly applies.

Because of Lawrence, the issue before us is whether the Texas statute impermissibly burdens the individual's substantive due process right to engage in private intimate conduct of his or her choosing. Contrary to the district court's conclusion, we hold that the Texas law burdens this constitutional right. An individual who wants to legally use a safe sexual device during private intimate moments alone or with another is unable to legally purchase a device in Texas, which heavily burdens a constitutional right. This conclusion is consistent with the decisions in Carey and Griswold, where the Court held that restricting commercial transactions unconstitutionally burdened the exercise of individual rights. Indeed, under this statute it is even illegal to "lend" or "give"

---

[26] Id. at 564, 123 S. Ct. at 2476 (emphasis added).

[27] Id. at 579–85, 123 S. Ct. at 2484–88 (O'Connor, J., concurring).

[28] Id. at 574–75, 123 S. Ct. at 2481–82.

a sexual device to another person.[29]  This further restricts the exercise of the constitutional right to engage in private intimate conduct in the home free from government intrusion.  It also undercuts any argument that the statute only affects public conduct.

The dissent relegates the burden on this right to rational basis review.  The State says we have two alternatives: (1) strict scrutiny if Lawrence established this right as a fundamental right or (2) rational basis review if Lawrence did not.  There has been debate about this and the Eleventh Circuit concluded that Lawrence did not establish a fundamental right.[30]

The Supreme Court did not address the classification, nor do we need to do so, because the Court expressly held that "individual decisions by married persons, concerning the intimacies of their physical relationship, even when not intended to produce offspring, are a form of 'liberty' protected by the Due Process Clause of the Fourteenth Amendment.  Moreover, this protection extends to intimate choices by unmarried as well as married persons."[31]  The Court also carefully delineated the types of governmental interests that are constitutionally insufficient to sustain a law that infringes on this substantive due process right.  Therefore, our responsibility as an inferior federal court is mandatory and straightforward.  We must apply Lawrence to the Texas statute.[32]

---

[29] Texas Penal Code Section 43.21(a)(5) defines "promote" to include to "give" or "lend." And the statute at Section 43.23(c) makes it a crime to "promote" sexual devices.

[30] Williams, 378 F.3d at 1234–39.

[31] Lawrence, 539 U.S. at 578, 123 S. Ct. at 1283 (quoting with approval Bowers v. Hardwick, 478 U.S. 186, 216, 106 S. Ct. 2841, 2857 (Stevens, J., dissenting)).

[32] Lawrence did not categorize the right to sexual privacy as a fundamental right, and we do not purport to do so here.  Instead, we simply follow the precise instructions from Lawrence and hold that the statute violates the right to sexual privacy, however it is otherwise described.

The State's primary justifications for the statute are "morality based." The asserted interests include "discouraging prurient interests in autonomous sex and the pursuit of sexual gratification unrelated to procreation and prohibiting the commercial sale of sex."

These interests in "public morality" cannot constitutionally sustain the statute after Lawrence.[33] To uphold the statute would be to ignore the holding in Lawrence and allow the government to burden consensual private intimate conduct simply by deeming it morally offensive. In Lawrence, Texas's only argument was that the anti-sodomy law reflected the moral judgment of the legislature.[34] The Court expressly rejected the State's rationale by adopting Justice Stevens' view in Bowers as "controlling" and quoting Justice Stevens' statement that "'the fact that the governing majority in a State has traditionally viewed a particular practice as immoral is not a sufficient reason for upholding a law prohibiting the practice.'"[35] Thus, if in Lawrence public morality was an insufficient justification for a law that restricted "adult consensual intimacy in

---

[33] The Eleventh Circuit disagreed in Williams v. Morgan, 478 F.3d 1316 (11th Cir. 2007), cert. denied, Williams v. King, 128 S. Ct. 77 (2007). There, the court held that Alabama's interest in "public morality" was a constitutional justification for the state's obscene devices statute. Id. at 1321–24. That fails to recognize the Lawrence holding that public morality cannot justify a law that regulates an individual's private sexual conduct and does not relate to prostitution, the potential for injury or coercion, or public conduct.

[34] See Respondent's Brief, Lawrence, 539 U.S. 558 (No. 02-102), 2003 WL 470184, at *48 (internal footnote omitted) ("The prohibition of homosexual conduct in [the anti-sodomy statute] represents the reasoned judgment of the Texas Legislature that such conduct is immoral and should be deterred . . . . [L]ong-established principles of federalism dictate that the Court defer to the Texas Legislature's judgment and to the collective good sense of the people of the State of Texas, in their effort to enforce public morality and promote family values through the promulgation of penal statutes such as [the anti-sodomy statute].").

[35] Lawrence, 539 U.S. at 577–78, 123 S. Ct. at 2483–84 (quoting Bowers, 478 U.S. at 216, 106 S. Ct. At 2841 (Stevens, J., dissenting)).

the home," then public morality also cannot serve as a rational basis for Texas's statute, which also regulates private sexual intimacy.[36]

Perhaps recognizing that public morality is an insufficient justification for the statute after Lawrence, the State asserts that an interest the statute serves is the "protection of minors and unwilling adults from exposure to sexual devices and their advertisement." It is undeniable that the government has a compelling interest in protecting children from improper sexual expression.[37] However, the State's generalized concern for children does not justify such a heavy-handed restriction on the exercise of a constitutionally protected individual right.[38] Ultimately, because we can divine no rational connection between the statute and the protection of children, and because the State offers none, we cannot sustain the law under this justification.

The alleged governmental interest in protecting "unwilling adults" from exposure to sexual devices is even less convincing. The Court has consistently refused to burden individual rights out of concern for the protection of "unwilling recipients."[39] Furthermore, this asserted interest bears no rational relation to the restriction on sales of sexual devices because an adult cannot buy a sexual

---

[36] See id. at 564, 123 S. Ct. at 2476. The State offers cases for the general proposition that protecting morality is a legitimate governmental interest. See, e.g., Paris Adult Theatre I v. Slaton, 413 U.S. 49, 61, 93 S. Ct. 2628, 2637 (1973). Our holding in no way overtly expresses or implies that public morality can never be a constitutional justification for a law. We merely hold that after Lawrence it is not a constitutional justification for this statute.

[37] See, e.g., FCC v. Pacifica Found., 438 U.S. 726, 98 S. Ct. 3026 (1978).

[38] See Denver Area Educ. Telecomms. Consortium, Inc. v. FCC, 518 U.S. 727, 759, 116 S. Ct. 2374, 2393 (1996) (holding, in the First Amendment context, that "[n]o provision, we concede, short of an absolute ban, can offer certain protection against assault by a determined child[;] generally, [however,] this fact alone [does not] justify reduc[ing] the adult population . . . to . . . only what is fit for children" (internal quotation marks and citations omitted)).

[39] Carey, 431 U.S. at 700–02, 97 S. Ct. at 2024–25; see Bolger v. Youngs Drug Prods. Corp., 463 U.S. 60, 71–72, 103 S. Ct. 2875, 2883 (1983).

device without making the affirmative decision to visit a store and make the purchase.

The State argues that if this statute, which proscribes the distribution of sexual devices, is struck down, it is equivalent to extending substantive due process protection to the "commercial sale of sex." Not so. The sale of a device that an individual may choose to use during intimate conduct with a partner in the home is not the "sale of sex" (prostitution). Following the State's logic, the sale of contraceptives would be equivalent to the sale of sex because contraceptives are intended to be used for the pursuit of sexual gratification unrelated to procreation. This argument cannot be accepted as a justification to limit the sale of contraceptives. The comparison highlights why the focus of our analysis is on the burden the statute puts on the individual's right to make private decisions about consensual intimate conduct. Furthermore, there are justifications for criminalizing prostitution other than public morality, including promoting public safety and preventing injury and coercion.[40]

Just as in Lawrence, the State here wants to use its laws to enforce a public moral code by restricting private intimate conduct. The case is not about public sex. It is not about controlling commerce in sex. It is about controlling what people do in the privacy of their own homes because the State is morally opposed to a certain type of consensual private intimate conduct. This is an insufficient justification for the statute after Lawrence.

---

[40] To guide future courts, the Court in Lawrence delineated what the right is not about: "The present case does not involve minors. It does not involve persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused. It does not involve public conduct or prostitution." 539 U.S. at 578, 123 S. Ct. at 2484. Instead, the right at issue in Lawrence dealt with two adults engaging in consensual sexual conduct. Id.

It follows that the Texas statute cannot define sexual devices themselves as obscene and prohibit their sale.[41]  Nothing here said or held protects the public display of material that is obscene as defined by the Supreme Court—i.e., the language in Section 43.21(a)(1) of this statute, excluding the words in the provision defining as obscene any device designed or marketed for sexual stimulation. Whatever one might think or believe about the use of these devices, government interference with their personal and private use violates the Constitution.

Appellants urge us to sustain their First Amendment claim to protect the advertisement of these devices.  We decline to explore this claim because if it is necessary, it may be premature.  Advertisements of the devices could be prohibited if they are obscene—meaning obscene as defined by the Supreme Court or by the bulk of Section 43.21(a)(1).  But the State may not prohibit the promotion or sale of a bed, even one specially designed or marketed for sexual purposes, by merely defining it as obscene.  We have held here that the State may not burden the use of these devices by prohibiting their sale.  If other issues need to be pursued, the parties are free to do so on remand in proceedings consistent with this decision.

Judgment REVERSED and the case REMANDED.

---

[41] See State v. Brenan, 772 So. 2d 64, 74 (La. 2000) (holding that "[t]he legislature cannot make a device automatically obscene merely through the use of labels"); State v. Hughes, 792 P.2d 1023, 1031 (Kan. 1990) ("The legislature may not declare a device obscene merely because it relates to human sexual activity.").

APPENDIX

Texas Penal Code

§ 43.21. Definitions

(a) In this subchapter:

(1) "Obscene" means material or a performance that:

(A) the average person, applying contemporary community standards, would find that taken as a whole appeals to the prurient interest in sex;

(B) depicts or describes:

(i) patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated, including sexual intercourse, sodomy, and sexual bestiality; or

(ii) patently offensive representations or descriptions of masturbation, excretory functions, sadism, masochism, lewd exhibition of the genitals, the male or female genitals in a state of sexual stimulation or arousal, covered male genitals in a discernibly turgid state or a device designed and marketed as useful primarily for stimulation of the human genital organs; and

(C) taken as a whole, lacks serious literary, artistic, political, and scientific value.

(2) "Material" means anything tangible that is capable of being used or adapted to arouse interest, whether through the medium of reading, observation, sound, or in any other manner, but does not include an actual three dimensional obscene device.

(3) "Performance" means a play, motion picture, dance, or other exhibition performed before an audience.

(4) "Patently offensive" means so offensive on its face as to affront current community standards of decency.

(5) "Promote" means to manufacture, issue, sell, give, provide, lend, mail, deliver, transfer, transmit, publish, distribute, circulate, disseminate, present, exhibit, or advertise, or to offer or agree to do the same.

(6) "Wholesale promote" means to manufacture, issue, sell, provide, mail, deliver, transfer, transmit, publish, distribute, circulate, disseminate, or to offer or agree to do the same for purpose of resale.

(7) "Obscene device" means a device including a dildo or artificial vagina, designed or marketed as useful primarily for the stimulation of human genital organs.

(b) If any of the depictions or descriptions of sexual conduct described in this section are declared by a court of competent jurisdiction to be unlawfully included herein, this declaration shall not invalidate this section as to other patently offensive sexual conduct included herein.

. . . .

§ 43.23. Obscenity

(a) A person commits an offense if, knowing its content and character, he wholesale promotes or possesses with intent to wholesale promote any obscene material or obscene device.

(b) Except as provided by Subsection (h), an offense under Subsection (a) is a state jail felony.

(c) A person commits an offense if, knowing its content and character, he:

(1) promotes or possesses with intent to promote any obscene material or obscene device; or

(2) produces, presents, or directs an obscene performance or participates in a portion thereof that is obscene or that contributes to its obscenity.

(d) Except as provided by Subsection (h), an offense under Subsection (c) is a Class A misdemeanor.

(e) A person who promotes or wholesale promotes obscene material or an obscene device or possesses the same with intent to promote or wholesale promote it in the course of his business is presumed to do so with knowledge of its content and character.

(f) A person who possesses six or more obscene devices or identical or similar obscene articles is presumed to possess them with intent to promote the same.

(g) It is an affirmative defense to prosecution under this section that the person who possesses or promotes material or a device proscribed by this section does so for a bona fide medical, psychiatric, judicial, legislative, or law enforcement purpose.

(h) The punishment for an offense under Subsection (a) is increased to the punishment for a felony of the third degree and the punishment for an offense under Subsection (c) is increased to the punishment for a state jail felony if it is shown on the trial of the offense that obscene material that is the subject of the offense visually depicts activities described by Section 43.21(a)(1)(B) engaged in by:

(1) a child younger than 18 years of age at the time the image of the child was made;

(2) an image that to a reasonable person would be virtually indistinguishable from the image of a child younger than 18 years of age; or

(3) an image created, adapted, or modified to be the image of an identifiable child.

(i) In this section, "identifiable child" means a person, recognizable as an actual person by the person's face, likeness, or other distinguishing characteristic, such as a unique birthmark or other recognizable feature:

(1) who was younger than 18 years of age at the time the visual depiction was created, adapted, or modified; or

(2) whose image as a person younger than 18 years of age was used in creating, adapting, or modifying the visual depiction.

(j) An attorney representing the state who seeks an increase in punishment under Subsection (h)(3) is not required to prove the actual identity of an identifiable child.

RHESA HAWKINS BARKSDALE, Circuit Judge, concurring in part and dissenting in part:

Concerning federalism and comity, few federal-court actions are more friction-producing than holding a state statute unconstitutional. To make matters worse, it is indeed rare to do so while, as here, reviewing a Federal Rule of Civil Procedure 12(b)(6) dismissal of challenges to the statute. Notwithstanding the best of intentions, the esteemed majority goes astray in both regards for the Fourteenth Amendment substantive-due-process claim.

For the Texas statute at issue, I concur in vacating the dismissal of the First Amendment commercial-speech claim (advertising) and remanding it for further proceedings, if any. On the other hand, the invalidation of the statute is legally incorrect for the Fourteenth Amendment substantive-due-process claim (sale). The dismissal of that claim should be affirmed. Accordingly, regarding that claim, I must respectfully dissent.

I.

The statute prohibits, inter alia, the sale or other promotion, such as advertising, of "obscene devices": those "designed or marketed as useful primarily for the stimulation of human genital organs". TEX. PENAL CODE ANN. § 43.21(a)(7); id. § 43.23; see also id. § 43.21(a)(1)(B)(ii). Such devices include, but are not limited to, "a dildo or artificial vagina". Id. at § 43.21(a)(7). The statute provides an affirmative defense for persons who " possess[] or promote[] [obscene devices] . . . for a bona fide medical, psychiatric, judicial, legislative, or law enforcement purpose". Id. at § 43.23(f).

Plaintiffs' complaints claim the statute unconstitutionally restricts commercial speech (advertising) under the First Amendment, as incorporated by the Fourteenth Amendment. The complaints also claim the "sale" portion of the statute violates substantive due process under the Fourteenth Amendment

because it impinges upon the right to engage in private intimate conduct without governmental intrusion. See Lawrence v. Texas, 539 U.S. 558 (2003). (Reliable Consultants, Inc. also presents an additional substantive-due-process claim under a parallel provision in the Texas Constitution. That state-law claim is subsumed within the following discussion of the federal constitutional claim.)

The complaints, however, do not include plaintiffs' advertisements, if any, or describe with any specificity the sexual devices they seek to sell. The complaints were dismissed for failure to state a claim under Rule 12(b)(6).

## II.

For starters, and contrary to the majority's position, Maj. Opn. at 12-13, the proscribed conduct is not private sexual conduct. Instead, for obscene devices, the statute proscribes only the sale or other promotion (such as advertising) of those devices, including, but not limited to, a dildo or artificial vagina.

For our de novo review of a Rule 12(b)(6) dismissal, we, needless to say, "accept all factual allegations in the [complaint] as true and examine whether the allegations state a claim sufficient to avoid dismissal". E.g., Grisham v. United States, 103 F.3d 24, 25 (5th Cir. 1997) (citation omitted). To avoid such dismissal, the complaint must provide "enough facts to state a claim to relief that is plausible on its face". Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). "Factual allegations [in the complaint] must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965 (quotation marks, citations, and footnote omitted). In other words, with some exceptions, our review is limited to the complaint, including any attachments. See Hogan v. City of Houston, 819 F.2d 604, 604 (5th Cir. 1987); Fin. Acquisition Partners LP v. Blackwell, 440 F.3d 278, 286 (5th Cir. 2006) (allowing review of documents in the public record) (citation omitted).

A.

As the majority properly holds, the commercial-speech claim (advertising) may be premature. Maj. Opn. at 13. This is especially true for an as-applied challenge, which may be the only basis for seeking to have the statute held unconstitutional for that claim. See Board of Trustees of SUNY v. Fox, 492 U.S. 469, 482-83 (1989) (quoting Ohralik v. Ohio State Bar Ass'n, 436 U.S. 447, 462 n.20 (1978)); see also Richard H. Fallon, As-Applied and Facial Challenges and Third-Party Standing, 113 HARV. L. REV. 1321, 1344 (2000) (discussing as-applied challenges as the only basis for attacking statute on commercial speech grounds).

For example, as noted supra, the complaints neither include nor describe the advertising, if any, plaintiffs seek to utilize. On the other hand, pursuant to Rule 8, only notice pleadings are required. On that basis, plaintiffs have perhaps stated a claim sufficient to withstand a Rule 12(b)(6) dismissal.

As the majority holds, that issue should not be decided today. No authority need be cited for another bedrock principle underlying federalism and comity: federal courts, if possible, should avoid ruling on constitutional issues. "The delicate power of pronouncing [a statute] unconstitutional is not to be exercised with reference to hypothetical cases thus imagined". United States v. Raines, 362 U.S. 17, 22 (1960). Remanding the commercial-speech claim avoids the "premature interpretation[] of [a] statute[] in [an] area[] where [its] constitutional application [is] cloudy". Id.

Accordingly, I concur in the majority's vacating the dismissal of the commercial-speech claim and remanding it for further proceedings, if any.

B.

My disagreement with the majority's analysis of the Fourteenth Amendment substantive-due-process claim is fundamental. In my view, the district court correctly ruled plaintiffs fail to state such a claim.

The majority avoids determining what level of scrutiny to apply to the substantive-due-process claim, stating only:

> The Supreme Court did not address the classification [of the level of scrutiny], nor do we need to do so, because the Court expressly held that "individual decisions by married persons, concerning the intimacies of their physical relationship, even when not intended to produce offspring, are a form of 'liberty' protected by the Due Process Clause of the Fourteenth Amendment. Moreover, this protection extends to intimate choices by unmarried as well as married persons."

Maj. Opn. at 9 (quoting Lawrence, 539 U.S. at 578). I believe, however, that the level of scrutiny to be employed is of critical importance to our review.

For the reasons stated by the Eleventh Circuit in its analysis of a statute materially identical to the one in issue, I conclude Lawrence declined to employ a fundamental-rights analysis, choosing instead to apply rational-basis review. See Williams v. Attorney Gen. of Ala., 378 F.3d 1232, 1236 (11th Cir. 2004) (citation omitted); see also Lawrence, 539 U.S. at 578 ("The Texas statute furthers no legitimate state interest which can justify its intrusion into the personal and private life of the individual." (emphasis added)); Lawrence, 539 U.S. at 594 (Scalia, J. dissenting) ("Not once does [the Court] describe homosexual sodomy as a 'fundamental right' or a 'fundamental liberty interest,' nor does it subject the Texas statute to strict scrutiny. Instead, having failed to establish that the right to homosexual sodomy is 'deeply rooted in this Nation's history and tradition,' the Court concludes that the application of Texas's statute to petitioners' conduct fails the rational-basis test.").

Furthermore, as also held by the Eleventh Circuit, I agree that, "[t]o the extent Lawrence rejects public morality as a legitimate government interest, it invalidates only those laws that target conduct that is both private and non-commercial". Williams v. Morgan, 478 F.3d 1316, 1322 (11th Cir.) (emphasis added), cert. denied, Williams v. King, 128 S. Ct. 77 (2007). The Texas

21

statute regulates, inter alia, the sale of what it defines as obscene devices. Obviously, such conduct is both public and commercial.

Therefore, I would hold: pursuant to the rational-basis standard of review, plaintiffs fail to state a substantive-due-process claim under the Fourteenth Amendment.

### III.

For the foregoing reasons, I concur in vacating the dismissal of the First Amendment commercial-speech claim (advertising); the dismissal, however, of the Fourteenth Amendment substantive-due-process claim (sale) should be upheld. Therefore, I must respectfully dissent from my BROTHERS' invalidation of the statute on that basis.